UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>THOMAS DOYLE,<br>   a/k/a AJ Doyle,<br>   a/k/a Austin Doyle,<br><br>                    Defendant. | **SEALED INDICTMENT**<br><br>25 Cr.<br><br>25CRIM525 |

### COUNT ONE
### (Wire Fraud)

The Grand Jury charges:

#### Overview of the Scheme

1.      From at least in or about December 2022 through at least in or about March 2025, THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, engaged in a scheme to defraud an art dealer ("Victim-1") in connection with the sale of a painting, *Mother and Child on a Hammock* ("*the Hammock*"), by the 19th Century French realist painter Gustave Courbet.

2.      In or about December 2022, THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, introduced himself to Victim-1 over email, representing himself to be in the business of buying and selling art. Over the next several years, DOYLE offered various artworks for sale to Victim-1, which Victim-1 did not purchase. During these communications, DOYLE made multiple false statements to Victim-1 over email and WhatsApp Messenger regarding his personal history, employment, wealth, and travel, including falsely stating that he managed the "art side" of a family trust with assets worth billions of dollars.

3.      In or about June 2024, THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the

defendant, and Victim-1 discussed that Victim-1 was selling *the Hammock*, which was being held in Manhattan. Victim-1 was seeking a location to show *the Hammock* to a potential buyer that had contacted Victim-1's gallery. DOYLE offered to take custody of *the Hammock* to facilitate this viewing and represented that he would store it at a townhouse in Manhattan that DOYLE purportedly owned and which was set up to display and store artworks. In addition, DOYLE claimed he had a potential buyer. Victim-1 agreed to DOYLE's proposal for the viewing, and DOYLE took custody of *the Hammock* through an intermediary.

4. In or about July 2024, THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, reiterated to Victim-1 that he had a potential buyer for *the Hammock* and Victim-1 authorized DOYLE to sell the painting on his behalf for approximately $550,000. In or about early August 2024, DOYLE falsely informed Victim-1 that he had sold *the Hammock* for that price.

5. Instead, an associate ("Associate-1") of THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, acting on DOYLE's behalf, offered *the Hammock* for consignment to an art gallery based in Manhattan ("Gallery-1") and, on or about August 15, 2024, delivered *the Hammock* to Gallery-1. Associate-1 provided the owner of Gallery-1 ("Owner-1") a false provenance for *the Hammock* that falsely stated, among other things, that it had been purchased from Victim-1 in or about 2019. Doyle had provided this false provenance to Associate-1.

6. On or about October 1, 2025, Associate-1, acting on behalf of THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, agreed to sell *the Hammock* for $125,000 to an art collector ("Collector-1") through Gallery-1. On or about that same day, Collector-1 paid Gallery-1, and on or about October 3, 2024, Gallery-1, after retaining a commission, wired $115,000 to Associate-1 as payment for *the Hammock*. On or about October 15, 2024, Gallery-1 delivered *the Hammock* to Collector-1.

7. Meanwhile, on or about October 3, 2024, Associate-1 wired approximately $109,250 to THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, with the wire memo "For Painting By Gustave Courbet." DOYLE never remitted to Victim-1 any proceeds from the sale of *the Hammock*. By in or about February 2025, DOYLE had spent all the proceeds from the sale of *the Hammock* on personal expenses and his own debts.

8. Between in or about August 2024 and March 2025, THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, to perpetuate the fraud, made multiple false statements to Victim-1 over email and WhatsApp Messenger regarding, among other things, the purported purchaser of *the Hammock*, its sale price, the structure of the sale, and anticipated timing of payments to Victim-1. DOYLE also falsely blamed his failure to pay Victim-1 on the purported buyer, claiming the buyer had yet to pay, when in fact, DOYLE had received the proceeds from the sale of *the Hammock*. In a further effort to perpetuate the fraud, in or about February 2025, DOYLE falsely told Victim-1 that he was outside of the United States in a remote area without internet or phone service. DOYLE, in fact, had not left the United States.

9. On or about March 4, 2025, THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, admitted over email to Victim-1 that DOYLE had "betrayed" Victim-1 and had "lied" to Victim-1 about *the Hammock*.

10. Victim-1 has never received payment for the sale of *the Hammock*, nor has *the Hammock* been returned to Victim-1.

**Statutory Allegations**

11. From at least in or about December 2022 through at least in or about March 2025, in the Southern District of New York and elsewhere, THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, knowingly having devised and intending to devise a scheme and

artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, DOYLE made false statements to Victim-1 regarding his personal history and circumstances, and in connection with the sale of *the Hammock*, DOYLE made false statements to Victim-1 and others regarding a purported buyer, the sale price, timing of payments, and provenance, and sent and received and caused others to send and receive, emails and other electronic communications, and wire transfers, to and from the Southern District of New York and elsewhere, in furtherance of the scheme.

(Title 18, United States Code, Sections 1343 and 2.)

## FORFEITURE ALLEGATION

12.     As a result of committing the offense alleged in Count One of this Indictment, THOMAS DOYLE, a/k/a AJ Doyle, a/k/a Austin Doyle, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

### Substitute Assets Provision

13.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

JAY CLAYTON
United States Attorney